Whenever you're ready, Counsel. May it please the Court, good morning. My name is Andrew Skouten, along with my colleague, Joseph Ergaslo. We represent the Plaintiff and Appellant, Bona Fide Conglomerate, Incorporated. I'm having a little trouble hearing you, so if you could just try to keep your voice up, that'd be great. Thank you. Bona Fide Conglomerate, Incorporated. I got that part. Yeah. Okay. I'd like to reserve two minutes of my time. Sure. This is not an ordinary antitrust case. Judge Posner once wrote, and I'm paraphrasing slightly here, that most antitrust cases are constructed out of a tissue of ambiguous circumstantial evidence, because an outright confession would obviate the need for a trial. Our case is much more like the latter circumstance. Bona Fide is a government contractor. It's a nonprofit. It competes for set-aside contracts for nonprofits that employ severely disabled persons. Appellee Source America administers that program on behalf of the federal government. It allocates these contracting opportunities among all of the various nonprofits in its network using bidding competitions. What happened here is that Source America's general counsel, Gene Robinson, admitted to Bona Fide that Bona Fide's rivals, its contracting allocations to, in an anti-competitive manner, and to Bona Fide's exclusion. These disclosures were made in a series of legally recorded conversations. Based on that, Bona Fide brought suit against the appellees, alleging violations of Section 1 of the Sherman Antitrust Act, alleging these smoking gun admissions by Gene Robinson, as well as a mix of other direct and circumstantial evidence. Well, can I ask you this? Is it right to think of the statements from former General Counsel Robinson as basically making out, I guess the picture that emerges in my mind, is one in which these individual affiliate defendants that you've named are able to exert perhaps improper influence on the board to get contracts in their favor, but that each of them is just sort of acting on its own to try to get some favorable treatment? And I guess I have a hard time seeing if that's all that's going on. And granted, it's across multiple different actors, but they're all prevailing upon the board of the, is it Source America's the, is that the right company? There's so many names, I fear I'm going to get them wrong. But why does that make out a Section 1 claim? I guess that's where I've gotten stuck. That's a fantastic question, because the individual agreements, the prevailing on the board, in fact, the board doesn't have power over allocation. They're using the board and management to influence the employees on allocation. The acquiescence by Source America to a single competitor is an agreement for Section 1 purposes. It just happens to be vertically aligned. We also have, so each of those is a Section 1 agreement. You're calling it an agreement, but I guess I'm just thinking that it's improper conduct, perhaps, if what General Counsel Robinson says is true. Maybe instead of following the program guidelines for how these contracts are supposed to be allocated, other improper factors are being introduced into individual decisions that are made. And I'll grant you that. Maybe it's multiple companies are being, are able to prevail upon Source America to get favorable treatment. But I, I'm just having a hard time seeing a Section 1 agreement in the way that I guess you're envisioning it. So maybe help me with that. Well, that's one Section 1 agreement. There's also a shared understanding. And this is what Robinson said, that there was a shared understanding by all of these other nonprofit affiliates that are able to exert and that Source America just does what they tell them to do. She also said that there's no specific pattern to this. The affiliates decide amongst themselves who is going to get which opportunity. And then they go into a room and they tell Martin Williams, a specific vice president in Source America, I'm sorry, the quote is, quote, in a room and tell him who's going to get what. And that's the way it goes. There is the horizontal agreement between the competitors. So it may be that there is the allegation that's not really supported by the wire, though. I mean, didn't she say you have to speculate? They don't let me really know. I'm not really in the room. What about that? Where it really, where you really drilled down to what she, she knew from firsthand knowledge. Isn't this, isn't this a stretch? Um, not at all. There are other things that back that up. I mean, of course, she was a general counsel of this, of this corporation. She monitored all of these transactions. She looked at it closely. We can see that there are circumstances where the bidding specifications were designed in ways to exclude potential competitors in ways that were contrary to federal law. And then there were pretextual denials whereby a Source America employee would say, well, you know, the, the, the government contractor wanted this top secret security clearance put in this opportunity. And then Robinson went and checked his, audited his correspondence and determined that that was false. Um, there's enough of these other circumstances which she saw, uh, which support her conclusion. Um, and I mean, she actually called what was going on there craziness. That's, that's not legitimate business. That's just to say that this is some kind of impropriety. If everyone is acting on this, then that's sufficient. In addition, she pointed to, um, uh, some board activity which supported that. Uh, a former board chair, his name was Greg Bender. He apparently wrote an email to Source America staff after becoming the chairman where he said, look, this, this bidding allocation process that we have, it's a sham. Those were his words. Now that I'm the board chair, I expect to get all the opportunities I'm bidding on. Um, there was another one. Uh, his name was David Gonzalez. He was also, uh, one of these competing affiliates was on the board. And he also brought suit against Source America, uh, alleging a similar thing. And what Mr. Bender told Mr. Gonzalez is, why are you making all this fuss? Don't you know that you can just tell them what to give you? Right there. There's an understanding that is shared among these affiliates and they act on this understanding. Um, we have some other, uh, things which also indicate that in addition to, to Ms. Robinson, which support these allegations. Um, one of the things that happened here was that, um, what really got Bonafide interested in what was happening, they had settled a prior, um, bid protest in the federal claims, entered into a new settlement agreement. And after entering the settlement agreement, they received no more bids. They won nothing. Well, prior to that, they had, um, success in the program. The fact that there was a breach of this contract, whereas before there was some success, uh, that does suggest acts contrary to the economic, uh, dishonoring of these contractual obligations suggests a prior obligation, uh, consistent with collusion. Uh, that's the Watson case out of the sixth circuit. That's exactly what they found. Um, the other thing that came to mind is Source America is paid by commissions on the revenues that the affiliates generated. Well, we have certain opportunities that were outright canceled. Robinson said this. She said that, uh, that Source America CEO, again, as punishment for essentially blowing the whistle on this entire crazy scheme, instructed the subordinates, uh, not to award Bonafide any more opportunities. And that if, uh, there's no one else to give the opportunity to, that this whole opportunity comes out of the program, they just cancel it all together. Source America forgoes the revenue and the severely disabled persons who stand to benefit from the employment, they go without jobs. That conduct is non-economically rational in the absence of collusion. Because again, Source America would actually make money from that. But to deny Bonafide the opportunity, um, that is precisely the kind of circumstantial. Well, you've just described unilateral conduct by Source America as, you know, retaliatory for your success in the bid protest. It doesn't, it has nothing to do with a section one claim right there. But what, what, what Twombly says, and I believe it's in footnote 10 of that case, that when you're looking at the circumstantial, uh, allegations, the question is, does it allow the inference of a proceeding agreement? Uh, obligations. But that's what I'm saying. The conduct you just described, maybe it's plausible that, uh, the reason you haven't gotten any more contracts is because, uh, your client rather, it's because Source America is punishing, uh, Bonafide for, uh, for its, its prior litigation. But that's, that doesn't give rise to an inference of any kind of collusion with any other, any other party, does it? It does because by blowing the whistle on this and saying, look, there's all manner of improprieties because the, the prior litigation actually involved two of the opportunities at issue in this case. And they said, look, um, Source America is predetermining winners. It's choosing who's going to win before they even put on a competition. Um, so they're telling people, look, this is happening. So in response to this, then there is the retaliation, which suggests not Source America was just upset, but that Source America is trying to harm Bonafide because they're blowing the whistle on the larger conspiracy. Uh, and Twombly says, as long as the inference can be drawn that the actor is acting pursuant to some preexisting obligation, then we can assume, or I should say, we can infer collusion. Um, the other thing is this, uh, there are, there are numerous examples of pretextual denials, persistent, repeated pretextual denials. If this was just unilateral conduct, why a pretext? Why say, oh, well, you, you didn't get this opportunity because of this reason when in fact it was for another reason. What's your best example of a pretextual denial that it can be demonstrated on the face of a complaint? Um, there's the allegation of the, uh, St. Elizabeth's, uh, Coast Guard headquarters where Source America first imposed a top secret security clearance, uh, then retracted it, said it was a secret security clearance. Uh, Bonafide applied, they were denied, uh, a, uh, affiliate, uh, CW resources who already had a secret security clearance, obtained it. And in that, um, in the debrief afterwards, Source America said, well, you didn't get it because it was a top secret clearance. When they were reminded that actually it said a secret security clearance, it, he changed, uh, Source America changed gears and said, well, you just don't have any relevant experience. Robinson went back and determined that the government contractor didn't even, hadn't even asked for a secret security clearance. That that was put in to limit competition. The other thing to keep in mind is there's a case out of the circuit called Harkins, uh, and it says, you know, anybody can decide how they want to do business, but if you're going to do business using competitive bidding, you can't interfere with that process by predetermining winners. That is not unilateral conduct. That is pure section one conduct as bid raking, even where, um, the person who's interfering with the opportunities is the person that's hosting it. Do you want to reserve some time? I will. Good morning. May it please the court, Mike Atanasio on behalf of Pride Industries and all of the appellees. For purposes of time, I would note that I had reserved 11 minutes, co-counsel for Opportunity Village reserved two minutes and counsel for NCSC reserved two minutes. Whatever you want to do. Thank you, Your Honor. That'll be up to you all to watch time. It'll be just fine. Go ahead. Bonafide has taken a series of 12 individual bid protests effectively, wrapped them together without any evidence or specific factual allegations in the amended complaint of collusive conduct by the affiliates and claim that that is an antitrust conspiracy. Under Twombly and this court's decision in Kendall, there simply have not been sufficient facts pled as Kendall instructs to know who did what, to whom, when, and for what purpose. As certain questions began to develop in the earlier argument, we can accept hypothetically the notion that Source America either arbitrarily or capriciously, or for a vendetta purpose, acted on individual notices, individual bids in such a way that Bonafide is aggrieved. We can accept that construct under Twombly and Kendall, yet not have a sufficiently pled conspiratorial complaint. Because it's unilateral conduct? Because of absence of agreement? Yes, Your Honor. And I would, I would, I would sharpen my, I would sharpen the pencil very clearly on this. We can look at each of the 12 notices that form the backbone of the amended complaint. Everything from a Coast Guard facility to a courthouse, to an air, to an Air Force facility. We can look at each one. And in one place in the amended complaint, one time, there's an allegation that the horizontal actors, the affiliates, somehow colluded. And that's found in paragraph 279 of the amended complaint. But all it says is a conclusory statement from Ms. Because Pride simply did not file a bid protest when it lost. That's it. I thought there was the additional allegation. I can't remember which, you know, which of the two companies. But basically that one of them was going to get this opportunity that they were bidding on. And in exchange for not, I guess, protesting, the other company was going to get some other, even more lucrative opportunity. That's the one. That is, that is the one I was referring to, Your Honor. So, so what we have there, if one goes and looks at that, though, is unlike the cases where there is actual insider knowledge, Ms. Robinson, from a distance, she's not involved in any way, from a distance, she infers that because one affiliate didn't challenge the award to the other affiliate, its bid must have been a sham bid. But there's no specific facts alleged to bear that out. Now it's at the pleading stage, admittedly. No, no. But I guess that's what I was sort of pushing back on your earlier statement. I thought that the allegation was made explicitly that in return, that basically had just kind of decided you're going to get this one and we're going to get this other one. And that that was the product of a collusive agreement between the two, in addition to Source America. If there was a specific factual allegation that one of the affiliates said that, or if Ms. Robinson had attended a meeting at which that was said, that, that would be relevant. That would be interesting. I would suggest it still wouldn't be enough, but that would be direct evidence. Again, if we look carefully at paragraph 279, yes, sir. Looking at it, Pride did not contact Source America to complain about notice number 2075 as it normally would. From this, Ms. Robinson concluded that the two defendants agreed that quote, Source America gets this notice number 2075 in St. Louis and Pride is going to get this other big one, close quote, project the $500 million project opportunity involving prefabricated deployable military installations. That's right. 279. And I think that's what Judge Wofford's referring to. And it's also what I'm referring to. No direct conversations, no, no admissions, no statements by any affiliate, the horizontal actors, no documents to support that referenced in the complaint and no allegation in the complaint that the second part, the makeup contract ever happened, ever went to market, that Pride got it, that anything happened. My objection to any reliance on that pair, on that paragraph. And what I would say really underscores the merit of Judge Curiel's decision below is the words from this, Ms. Robinson concluded. That's it. And if we look at the other cases where insider information has been deemed to be sufficient to get past the pleading stage, we have, for instance, NRA polyurethane foam antitrust litigation. In the complaint, there were reports of interviews derived from Department of Justice leniency application in which specific witnesses admitted to their own participation in the conspiracy. One more, West Penn Allegheny Health System, a third circuit case, defendant CEO admitted to negotiating restraint directly with competitor. But it's not your position that they have to have somebody on the wire admitting to participating in a conspiracy. No, no. I'm trying to draw a distinction between what we have from Ms. Robinson in the paragraph we all just collectively looked at, which is all there is, versus actual insider knowledge. It doesn't have to be recorded, but of any kind, just on the direct evidence piece, Your Honor. Okay. And the only direct evidence is Ms. Robinson of any note. And your argument is that with respect to Ms. Robinson, they're offering only her opinions and her conclusions without this direct evidence. Is that correct? That's correct, Your Honor. And I would point out, and this also touches on some questions that were asked earlier of Helen's counsel, Ms. Robinson, under the first amended complaint, states that the insiders, the would-be conspirators at Source America, not the affiliates, concealed information from her, and that was pointed out. That's paragraph 94 of the amended complaint. She's not an insider vis-a-vis anything the affiliates were doing. That's really the point here. So to credit her testimony, to get past Twombly, it is supposition and conclusory and sweeping. She uses broad terms like the network or the mafia, but unlike the cases where direct evidence is found sufficient for the district court to allow the case to go forward, she doesn't have any direct knowledge of the horizontal agreements. And if I may, on the issue of whether individual two-party agreements are enough to get past the pleading stage, which we just heard about in response to a question, that is nowhere pled in the complaint. The complaint is pled throughout as a multi-party horizontal conspiracy involving the affiliates working together to fix the system and get contracts up above from Source America. There is no allegation of sort of the rimless, if you will, the rimless type of antitrust violation in the complaint. But do you feel, if I understand the facts correctly, the affiliates were also members of the board of Source America or be some of the members of the board? Am I correct? Your Honor, under the, taking the allegations of the complaint is true, paragraph 76, at no time over the 10-year period where the wrongdoing is alleged, were there more than four board members from the affiliates on a 25-member board. So the answer to your question is yes, but a case that's readily distinguishable from, for instance, the NFL case where you had all the NFL teams, 32 out of 32, form a licensing entity and then collectively work together opposite other parties, which the court found that could be an anti-Sherman Act conspiracy, at least at the pleading stage. Nothing like that here where at any one time you have four or fewer of a 25-person board. So there's no sufficient allegation to make out that Source America is captive or Source America is controlled, much less that it has unanimous board membership from the affiliates. Unless there are any other questions, I will sit down and turn it over to counsel for Opportunity Village on the jurisdictional question. Thank you, Your Honor. Good morning, and may it please the court. Cynthia Filipovich appearing on behalf of the defendant, Opportunity Village, joined by co-defendant, Job Options. The threshold issue before the court is whether subject matter jurisdiction exists. And the answer to that question is no. Indeed, the presumption that this court lacks subject matter jurisdiction has not been overcome in this case. And in concluding otherwise, the district court erred by failing to strip plaintiffs' antitrust labels off of the claims and instead look to the gravamen of those claims, to the conducted issue. And the conducted issue in each and every one of plaintiffs' claims is that of the process in the procurement of a federal government contract for which, pursuant to the Tucker Act, 28 U.S.C. 1491b1, the court of federal claims has exclusive subject matter jurisdiction. And dismissal pursuant to 12b1, as opposed to 12b6 in this case, is significant because to conclude otherwise is to provide disgruntled federal contractors, such as plaintiff or any one of the 4,000 other disgruntled contractors who filed bid protests last year, both a forum as well as a remedy, in this case money damages, that Congress never intended. And I wish to note that plaintiff mentioned in their reply brief that the court of federal claims does not have jurisdiction over antitrust claims. Well, that's true. But that presupposes that we're dealing with valid antitrust claims instead of disguised bid protest claims. But I also wish to note for the panel that Congress has provided a policing mechanism for the protest process, for the federal contracting process. And that lies in the Federal Acquisition Regulation, 48 CFR 3.301, which implements the Competition and Contracting Act, 41 U.S.C. 3301xec, and expressly implements 41 U.S.C. 3037. Under that statute, if valid antitrust activity is at issue, the contracting agency head notifies the attorney general for antitrust, who then performs an investigation. And if the attorney general is of the mind that colorable antitrust activity is afoot, the remedy is for the Department of Justice to file a suit. To file a suit on behalf of the people of the United States of America, whose monies it is that is in fact awarding these federal contracts. Did you want to leave any time for counsel? Or are you splitting it three ways because you're down to under two minutes? I will just respectfully request that the court dismiss this claim for a lack of subject matter jurisdiction, and turn the rest of my time over to co-counsel. Thank you. We appreciate your argument. Thank you. Counsel, do you want to? Take one minute. Well, you have a minute and 39 seconds. Thank you. Thank you. May it please the court. My name is Jeff Levy of Jones Day. I'm here as counsel to the Defendant National Council of Source America Employers. According to the complaint, paragraph 19, the National Council of Source America Employers is an unincorporated association of all AbilityOne affiliates. So it's all the affiliates that bid for these contracts. It has, quote, no budget, no office, no staff, no resources. It relies entirely on the Source America board and Source America's offers and employees, close quote. And so the only reason I had asked for one minute was to explain and the reason we had filed a separate brief. There are no charging allegations in the entire complaint against the National Council of Source America Employers. We aren't mentioned in conjunction with the 13 procurements that are listed at some length in the complaint, nor are we mentioned in conjunction with Gene Robinson's allegations. We are simply an unincorporated association that helped facilitate cooperation. And so under both Twombly and, more importantly, Kendall, there's literally nothing in the complaint that would tell the panel who at the National Council of Source America Employers did anything, not a single reference to someone who was functioning or operating on behalf of the association, no reference to who, what, when, where under the Kendall case. It's simply noted as existing. And so we filed a separate brief on that basis. I thank you for your time. Thank you. You're in with all guests. I'm sorry to say you had three minutes, three seconds to spare, but actually three seconds over, so. Thank you. Pretty close. Thank you. Please put two minutes on the clock. All right. Thank you, Your Honor. Very quickly, to get back to, I believe, Judge Watford's original question, I believe the namespace case actually illustrates that point very clearly. It's a very similar circumstance and setup. And there, Judge Hurwitz said, we're not going to infer a conspiracy among the board members and this nonprofit hired by the government in the absence of allegations of illogical or suspicious activity. Well, we've made those. The other point I wanted to note is there's a real issue here as to whether something that the general counsel of one of the co-conspirators, whether her statements can be just disregarded as the legal conclusion allegations on my part. I didn't say those things. She did. At some point, we have to be able to credit those. They can't just be disregarded. They are, at very minimum, also circumstantial allegations that must be given the presumption of truth because they're not legal conclusions by the plaintiff. Those are the legal conclusions by the co-conspirator. In addition, I wanted to note the idea that there's no unilateral conduct here. There's another problem. In relation, actually, to Pride, on two occasions, Source America employees disparaged Bonafide to a subcontracting partner that it had and encouraged it to team up with Pride on a TFM contract that eventually was never let. As to the Tucker Act, we did allege antitrust claims, whether they stated a claim doesn't make them immaterial. We are the master of the complaint. You can't look through that. The United States is not a party to this action, and an Eastern District of Virginia court case says that the Source America procedures are not procurements. Finally, as to NCSE, as we argued in the reply brief, to the extent that musical instruments provides a handy paradigm to understand this, they are the lug nuts on the hub-and-spoke conspiracy. They actually facilitate the collusive conduct and develop the sham procedures. Unless there's any more questions, I'll happily submit. Thank you, counsel. Thank you both. Thank you all, I should say.
judges: Christen, Watford, Soto